IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 10, 2007

## ANTHONY T. WOODS v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Hardeman County
No. 6755     J. Weber McCraw, Judge**

---

**No. W2006-01136-CCA-MR3-PC  - Filed January 8, 2008**

---

Petitioner, Anthony Woods, appeals the post-conviction court's denial of his petition for post-conviction relief in which he alleged the ineffective assistance of counsel at trial when he was convicted of aggravated assault.  After a thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA McGEE OGLE, JJ., joined.

James N. Adams, Jr., Corinth, Mississippi, (on appeal); and Charles Fleet, Bolivar, Tennessee, (on appeal), for the appellant, Anthony T. Woods.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Joe Van Dyke, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Petitioner was indicted on three counts of aggravated rape, and one count each of false imprisonment, aggravated assault and aggravated burglary.  Following a jury trial, Petitioner was found guilty of aggravated assault and aggravated criminal trespass, and not guilty on the remaining charges.  The trial court sentenced Petitioner to six years on the aggravated assault conviction and dismissed his conviction for aggravated criminal trespass.  The facts surrounding Petitioner's convictions were summarized by this Court in Petitioner's direct appeal as follows:

On August 3, 2002, the victim, Fallon Hill, attended a party near her home in Bolivar, Tennessee.  The appellant also attended the party.  At some point that

night, the appellant approached the victim and asked her if she wanted to "hit his blunt." She had met the appellant prior to that night, but knew him only as Dogman. She went with the appellant and several other people to the appellant's car where they proceeded to smoke marijuana. The victim had already had several drinks at the party. The victim claims that the only interaction she had with the appellant that night was when she went to his car to smoke marijuana, but Anthony Jones, the sister [sic] of the woman hosting the party, claims that he saw the appellant and the victim sitting on a bench together that night where the appellant "had his arm around her."

When the victim got ready to leave the party, she discovered that her vehicle was blocked in by another car so she slept in her car for about thirty minutes waiting for someone to leave so she could drive home. She eventually left shortly after midnight, stopping on the way home to get some cigarettes and a soft drink. She also drove by her sister's house but did not stop when she noticed all the lights were off.

When the victim arrived at her mobile home, she went inside and locked the front door. She turned on two lights, one in the living room and one in the bathroom, changed into a t-shirt and underwear, and went to bed. The next thing she remembers is being awoken by someone grabbing her ankles, pulling her to the end of the bed, and yelling, "Get up bitch." The house was completely dark. The victim claims that the attacker used a pair of wire cutters to stab her in the face and that her head was "mashed" against the wall behind her bed. The attacker also allegedly tried to place duct tape over her mouth and told her that "he was going to kill [her]." She recognized the voice of the attacker as that of the appellant.

The victim says that the appellant then raped her twice digitally and that she was painfully scratched by the appellant's unusually long fingernails. She "was trying to push him off" and begged him to stop, even lying and telling him that she was pregnant in hopes that he would stop attacking her. Instead, the victim claims that the appellant then forced her to perform oral sex on him by pushing her head down onto his penis. At some point, the victim turned on a bedside lamp and positively identified the appellant as her attacker. The appellant then had sex with the victim while wearing a condom. He held her down with his arms and body weight. The victim remembers this happening more than one time because she remembers him changing condoms and placing the used condoms in a plastic bag. The appellant told her he was doing these things to her because "when he wanted something he was going to get it even if he had to take it." The appellant then told her that he would pay her rent if she kept everything a secret. The victim agreed, thinking that if she complied with his requests, he would leave her alone. The victim then proceeded to drive the appellant to a nearby bank where he withdrew $200 from an ATM machine and gave it to the victim. The victim drove the appellant back to her house, hoping that he would leave her alone.

At that time, the victim told the appellant that she was going to her sister's house. She went inside the house, gathered a few belongings, and took them out to her car. She went back into the house to get her keys and the appellant followed her inside, claiming that he could not find his keys. The victim, trying to get the appellant to leave, agreed to help him look for his keys. When the victim walked down the hallway towards her bedroom, the appellant struck her in the forehead with a hammer. The blow inflicted a laceration to the victim's forehead. The victim claims that the appellant hit her in the head with the hammer twice, but there was only one laceration on her head. She eventually managed to wrestle the hammer away from the appellant.

About that same time, the two heard a noise that sounded like a car pulling up to the victim's home. The appellant went to lock the front door. The victim made a run for it, bolting out the back door of the home with the hammer in her hand. She ran to the home of one of her neighbors, Priscilla and Willie Polk. Mr. Polk, an over-the-road truck driver, was in the driveway of their home preparing to leave on a trip. The victim was crying and claimed that she "had been raped and beaten in the head with a hammer." He immediately told his wife to call 911.

When the police arrived, the victim handed over both the $200 and the hammer. The victim was taken by ambulance to Bolivar General Hospital where she received stitches for the avulsive laceration to her forehead. No other visible injuries were noted by the paramedics or medical personnel. The victim did not have any other scratches, bruises, or cuts. A rape kit was administered, but the results were not in the medical records. While at the hospital, the victim identified the appellant as her attacker.

When the police investigated the scene, they found a broken window and cut screen on the exterior of the victim's mobile home. The police were able to get latent fingerprints from the window frame that matched the fingerprints of the appellant. The police also secured the transaction receipt from the bank confirming that a $200 withdrawal was made from the appellant's bank account at 4:59 a.m. on August 4, 2003.

The day after the attack, the victim stayed with her sister, who was having a pool party. Several people claim they saw the victim at her sister's house swimming, drinking beer and smoking marijuana.

*State v. Anthony Tony Woods*, No. W2003-02785-CCA-R3-CD, 2004 WL 1533947, at *1-2 (Tenn. Crim. App., at Jackson, July 8, 2004), *perm. to appeal denied* (Tenn. Dec. 6, 2004).

## II. Post-Conviction Hearing

The sole evidence presented at the post-conviction hearing consisted of Petitioner's testimony. Petitioner testified that his trial counsel's assistance was ineffective for refusing to call Lavell Durham as a witness at trial. Petitioner said that Mr. Durham, who owned the house in which the assault occurred, would have testified that he removed the broken window from the trailer before the window was tested for fingerprints. Petitioner said that Mr. Durham would have also testified that he saw one of the State's witnesses and an investigator leave a motel room prior to Petitioner's trial.

Petitioner said that the trial court erred in sentencing him because the trial court did not state on the record its reasons for sentencing him at the top of the sentencing range. Petitioner acknowledged that he did not appeal his sentence.

On cross-examination, Petitioner acknowledged that a fingerprint expert was called to testify at trial that Petitioner's fingerprints were found on the broken window. Petitioner insisted that it was not established at trial that the window was his point of entry. Petitioner acknowledged that the jury found him not guilt of aggravated burglary.

Petitioner acknowledged that he had been sentenced as a Range I, standard offender, for his aggravated assault conviction, but he stated that trial counsel's assistance was ineffective for not presenting to the trial court as a mitigating factor the fact that Petitioner was employed at the time of the incident.

## III. Analysis

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. T.C.A. § 40-30-110(f). However, the trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review. *Id.*; *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Id.* at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id*. Failure to satisfy either prong will result in the denial of relief. *Id*. Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

## A. Failure to Investigate

Petitioner argues that his trial counsel's assistance was ineffective because he failed to investigate the potential testimony of Mr. Durham. Petitioner contends that Mr. Durham's testimony would cast doubt on the reliability of the fingerprint evidence.

"When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Neither the post-conviction court nor this court may speculate on what a witness' testimony might have been. *Id*. Without Mr. Durham's testimony at the post-conviction hearing, Petitioner has failed to establish any prejudice. Moreover, the post-conviction court found, and we agree, that the potential testimony would have been material only to the charge of aggravated burglary for which Petitioner was found not guilty. Petitioner is not entitled to relief on this issue.

## B. Failure to Present Mitigating Evidence

Petitioner argues that his trial counsel provided ineffective assistance of counsel because he failed to present any evidence of his employment in mitigation of his sentence. This Court has previously concluded that some consideration of a defendant's work history "is consistent with the purposes and principles of the Sentencing Act." *State v. Kelley*, 34 S.W.3d 471, 483 (Tenn. Crim. App. 2000). However, the only evidence offered at the post-conviction hearing as to Petitioner's work history is his testimony that "I had a job at the time." Petitioner offered no information concerning the nature of his job, the length of service, or his job performance. Based on the foregoing, we conclude that Petitioner has failed to establish that he was prejudiced by trial counsel's failure to advance Petitioner's work history as a mitigating factor. Petitioner is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the post-conviction court's dismissal of Petitioner's petition for post-conviction relief.

_____
THOMAS T. WOODALL, JUDGE